IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES** | * |
| | * |
| v. | *   Crim. Case No.:  SAG-04-004 |
| | * |
| **LONDON KING,** | * |
| | * |
| **Defendant.** | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

In 2005, London King pled guilty to carrying and discharging firearms during and in relation to a drug trafficking crime.  On May 3, 2007, United States District Judge J. Frederick Motz amended King's sentence to 264 months of incarceration, to be followed by a period of five (5) years of supervised release.  ECF 159.  King is currently incarcerated at FCI Allenwood Low, with a projected release date of March 23, 2023.  ECF 297; ECF 321-1.  On December 10, 2020, King filed a pro se Motion for Compassionate Release.  *Id.*  This Court appointed counsel to represent King, and full briefing ensued.  ECF 313, 321, 325.  No hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2018).  For the reasons that follow, King's Motion will be denied.

**I.      LEGAL STANDARDS**

As part of the First Step Act, enacted in December, 2018, Congress expanded 18 U.S.C. § 3582(c), permitting courts to reduce an existing term of imprisonment where "extraordinary and compelling reasons warrant such a reduction."  *See* 18 U.S.C. § 3582(c)(1)(A)(i) (2018); Pub. L. No. 115-391, tit. VI, § 603(b), 132 Stat. 5194, 5239-41 (2018).  While previously, any motion for compassionate release had to be initiated by the Bureau of Prisons ("BOP"), the First Step Act granted defendants the ability to move the Court for a reduction in their sentence for "extraordinary and compelling reasons."  § 603(b)(1).  Before a defendant's motion can be filed with the Court,

one of two conditions must be satisfied: (1) the defendant must have exhausted all administrative remedies to appeal the BOP's failure to bring a motion on his behalf, or (2) thirty days must have lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. *Id.* Once a motion is for compassionate release is properly filed, the Court follows a three-step inquiry: (1) determining whether "extraordinary and compelling reasons" render the inmate eligible for compassionate release; (2) considering whether the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of a sentence reduction; and (3) ensuring that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

## II. ANALYSIS

It appears that King adequately exhausted his administrative remedies. *See* ECF 321-2, 321-3. Even assuming that this gatekeeping requirement has been satisfied, King's Motion fails to establish any "extraordinary and compelling reason[]" warranting compassionate release.

Congress has charged the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). 28 U.S.C. § 994(t) (2018). In response, the Commission defined "extraordinary and compelling reasons" to exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) "other reasons" as determined by the BOP. *See* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1(A)–(D) (U.S. SENTENCING COMM'N 2018) [hereinafter "U.S.S.G."]. This Court has authority to consider

any "extraordinary and compelling reason" a defendant might raise, regardless of the BOP's definitions. *See United States v. McCoy,* 981 F.3d 271, 284 (4th Cir. 2020).

Relevant to this case, the COVID-19 pandemic can, in certain circumstances, give rise to an "extraordinary and compelling reason[]" for an inmate's release under the First Step Act. *E.g.*, *Wise*, 2020 WL 2614816, at *6-8; *Gutman*, 2020 WL 2467435, at *2. In this Court's view, the case law demonstrates that continued exposure to COVID-19 in an incarcerative setting might convert a medical condition that might not otherwise be deemed "serious" into a "serious medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *See* U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii)(I).

However, the fact that COVID-19 is present in a correctional facility is not alone sufficient to qualify an inmate for compassionate release under the First Step Act. *See United States v. Williams*, Crim. No. PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.) ("The existence of the present pandemic, without more, is not tantamount to a 'get out of jail free' card."). Instead, to qualify for compassionate release, an inmate must demonstrate that he (1) has a condition that compellingly elevates his risk of becoming seriously ill, or dying, from COVID-19, and (2) is more likely to contract COVID-19 in his particular institution than if released. *See, e.g.*, *Wise*, 2020 WL 2614816, at *6-7 (discussing the danger that COVID-19 poses, and collecting cases finding that "serious chronic medical conditions and old age qualify" as compelling reasons for compassionate release); *United States v. Austin*, Case No. 15-20609, 2020 WL 2507622, at *4-5 (E.D. Mich. May 15, 2020) (finding that even if the defendant's petition was timely, release would be improper, even though he both was immunocompromised and had heart disease, because there were no COVID-19 cases at his prison), *appeal filed*, No. 20-1523 (6th Cir. June 8, 2020);

3

*United States v. Harper*, Crim. No. 7:18-cr-00025, 2020 WL 2045381, at *3 & n.3 (W.D. Va. Apr. 28, 2020) (release justified by the defendant's age, heart condition, COPD, emphysema, and asthma, coupled with the fact that the prison he was housed at had "the fourth largest number of infections among federal prisons in the country"); *Mel*, 2020 WL 2041674, at *3; *United States v. Shah*, Case No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020) (denying release, in part, because there were no COVID-19 cases at the inmate's facility, and the prison was making efforts to protect inmates).

The analysis under the first prong of this two-part inquiry is heavily guided by the CDC's published risk factors for incurring a severe, life-threatening case of COVID-19.   King, ▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

██████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████ While this Court lacks the ability to predict conclusively who will or will not suffer severe COVID-19 complications, the evidence does not suggest that King's conditions, at his relatively young age, so elevate his risk for severe illness as to constitute an extraordinary and compelling reason.

Moreover, King declined to avail himself of an FDA approved COVID-19 vaccine when it was offered to him by the BOP.  ECF 321-5.  Courts now recognize that a refusal to take preventative measures to protect oneself from COVID-19 undermines any assertion that the risk of viral infection constitutes an extraordinary and compelling reason justifying release.  *See, e.g. United States v. Martin*, Case No. 1:05CR21, 2021 WL 1168696 (N.D. W. Va. Mar. 26, 2021) (collecting cases); *United States v. Siegel,* Cr. No. TDC-03-0393, 2021 WL 962491 (D. Md. Mar. 15, 2021) (premising a decision to deny compassionate release, in part, on the fact that the defendant "has refused to accept vaccination, a more direct means of protecting herself from COVID-19 than full release from prison). Any decision to the contrary would create a perverse incentive in favor of declining the vaccine, undermining the BOP's efforts to protect its incarcerated population and to allow prison operations to return to some degree of normalcy in the coming months.  In fact, information available on the BOP's website indicates that there are no current cases of COVID-19 at FCI Allenwood Low, perhaps because a significant number of its inmates and staff have been inoculated.  *See* https://www.bop.gov/coronavirus/ (last visited April 13, 2021).

Because King has failed to provide an extraordinary and compelling reason for compassionate release, the Court need not address the relevant § 3553(a) sentencing factors.  The

Court observes, however, that the offense of conviction involved participation in a violent drug conspiracy along with direct involvement in a double murder, making it unlikely that a reduced sentence would adequately protect the public or comport with the policy goals of Congress and the Sentencing Commission.

In sum, King is not entitled to the relief sought because he has not established a medical condition that compellingly elevates his risk of severe illness, a rampant COVID-19 outbreak at his place of incarceration, or any other extraordinary and compelling reason that might support his early release.  Accordingly, his Motion, ECF 297, 313, will be denied by separate order.

_____/s/_____ _
Stephanie A. Gallagher
United States District Judge